Good morning, Justice. My name is Edward Gibson. I represent the defendant, Mr. Cosmano. The trial, this case essentially was a cold case investigation. It was a murder in 1981. There was a double witness in 1981. They could not identify the defendant as being the person who shot the victim in this case. In 2008, some 27 years later, there was a cold case investigation. Witnesses were interviewed. The trial consisted of a number of witnesses, but approximately seven that identified Mr. Cosmano as being the shooter in this case. The reasons for not testifying, or at least the reasons expressed in court for not testifying or not talking to the police initially, because they almost all did talk to the police initially and denied knowledge, was that either they were fearful of something called the mafia connection of Mr. Cosmano, or they just didn't want to get involved. As to the former, there was a stipulation at trial that after a search in records of the Chicago Police Department, there was absolutely no mafia connection. But the fact of the matter is, this permeated the trial and was used really as a jumping off spot for a number of what we argue is improprieties and errors. Our argument essentially is that the cumulative effect of the errors in the trial merit a new trial. I'd like to begin with the closing argument, the rebuttal closing argument. Counsel, I have one question for you. It has nothing to do with any flawed tax plan and nothing to do with any flawed political plan, but it's the number nine that keeps resonating. Nine. And it has everything to do with this case. And the number nine is the number of witnesses who stated that either they saw your defendant shoot, they saw him with a gun, they heard the shots. And you're talking about from Frank Mildenberger, that's one, hell, Bertha Rallme, that's two, Herman Rivera, that's three. Wilson, Maldonado, four. Enrique Maldonado, five. Juan Torres, six. James Bufka, seven. Carmen Murillo, eight. Florence Belsitis, nine. Nine. Nine witnesses, counsel. Eight, actually. Mr. Middleberg and Mr. Bartholomew were on the scene. They were at the shooting. They looked at the line-up that Mr. Cosmano was in. They didn't identify Mr. Cosmano. Mr. Middleberg testified at the trial and did not identify Mr. Cosmano at the trial. Ms. Bartholomew, the second person who was on the scene. But he identified the person who shot as a person who looked Hispanic, was 40, was 5'9", 195 pounds, with black straight hair, combed back, as some other witnesses did. So at the least, you know, his testimony is corroborative. His testimony was corroborative of having seen the shooter, but he was close to the scene. He looked at a line-up. He did not see Mr. Cosmano or identify Mr. Cosmano in the line-up. He saw Mr. Cosmano in the courtroom. He didn't identify Mr. Cosmano. He was only called to the stand to testify to the circumstances of the shooting. And as a matter of fact, the initial identification of the shooter by people on the scene was a youngish Hispanic man, which Mr. Cosmano was not. And the identification and the description of the man who initially did the shooting did not come close to Mr. Cosmano. Mr. Cosmano was in a line-up originally, and we don't know from the line-up whether it was just these two or others. I believe Mr. Malamado at one point said he saw a line-up, but nobody was identified. And so I agree with you. My response should refer to eight, because there were eight people who did identify Mr. Cosmano as either being involved in the shooting. The problem in this case is that because of this, notwithstanding all of this, this is 27 years. I mean, these people came forward, at least were brought forward 27 years after the incident. There was inconsistencies with what they said. And the prejudice was palpable during this trial. I mean, the mafia references were palpable in the trial, Your Honor. These people were on the scene. They were in the alley. They had worked with this defendant previously. I mean, 27 years ago. It's what's remarkable is that they would have such vivid memories 27 years later. That's what's remarkable. Your Honor, I understand it's the State's argument that the evidence in this case was overwhelming. We basically have taken the position and take the position that it wasn't. Other than these identifications, there were no statements, there were no fingerprints, there were no gun, there was no gun. I would just like to, you know, because my time is very short, but I would like to just read one section of the closing argument and comment on it for Your Honor. And there's really, I'm really going to... Counsel, you know we're very familiar with the facts of the case. So you need not repeat. I'm not going to repeat any facts. I'm going to repeat the misstatements of facts. What I'm suggesting is if you look on page 26 of our briefing and you see where it says that the people didn't, that they saw an off-duty policeman get the gun. Don't talk anymore. He's in the mafia. He will kill our family. None of that's true. None of that was true. But that does not belie that that is what she was told as a child of 13. All she said in the record was... And what I am saying to you is, Your Honor, that the record is so replete with error. And I am saying to Your Honor that if in fact the case was as good as Your Honor is saying, if in fact the case was so hyped because of the number of these witnesses, why would the prosecutor, who was a very good prosecutor, do what he did? There was constant misstatements of the facts. There was, as to every one of those paragraphs on 26, they're just not true. And they're doing it, plus there was constant reference to the... Your time is short. Just answer me this. Where has the statement of James Bufka, Carmen Murillo, or Florence Balsitis as to the shooting and your defendant, where has that been impeached? Anywhere? It's been impeached at the trial. At the trial, basically, Florence Balsitis initially didn't identify the defendant right before they went in front of the grand jury. Nobody asked her. In front of the grand jury they did, and then all of a sudden two weeks before trial, she says, you know, if I can help you, I'll identify him. And then when we go to trial, Florence Balsitis says, I told him last night that he had curly hair. When they gave her the picture of the 81 ID, she was even able to identify him from that photo. She was able to identify him in the photo a month after the trial, a month before the trial, and didn't identify him in front of the grand jury, Your Honor. And I'm suggesting to Your Honor, with regard to Florence Balsitis, I would ask Your Honor, because my time is short and I think I'm almost done, but I would ask Your Honors to concentrate on two things. There was a comment with regard to the lawyer. He said at least on two occasions, he had his lawyer. Why did he call his lawyer? He said that at the end of there. The words were, they were working for Mike Cosmano's lawyer, referring to some investigators. If he didn't shoot anybody, why is Mike Cosmano Anthony Onesto, and why is he there? And a second instance, he says to the, he basically talks about a fellow by the name of Willie, who came in in 1981, and he said, they wouldn't have, because Willie told, and Willie was deceased. They said Willie told, or they wouldn't have been looking for him. He wouldn't have called his attorney Anthony Onesto and asked him to bring in his client. There was, at least on two occasions, constant reference to the attorney. Two occasions. And the, you picked it, and then you go back to Balsitis, and you look at Balsitis and the change of her testimony. And you go back to the reference to a gun. She never changed her testimony on what she saw. But she changed her testimony as to when she said it. She never changed her testimony about being in the alley and seeing your client shoot and seeing Rodriguez fall. She did change her testimony as to who she saw and who she saw do it. She didn't identify Mr. Balsitis in 1981. She didn't identify Mr. Balsitis when she did it. No one asked her in 1981. I mean, Mr. Cosmano. They did ask her. And she couldn't identify who did it until sometime after the grand jury, Your Honor. Did I run my 15 minutes yet? If I did, I'll stop. If not, I'll finish. But I don't think I did. Okay, please wrap up. I know I've... I just wrapped up. I'll pause your time. Go on. There was the issuance of the gun. There was the issuance of the lawyer. There were the comments. A whole series of things that he just said that aren't true. And Your Honor obviously believes it's overwhelming, and we don't. And you'll see our argument there. But I'd like to just say one thing. Because they have a lot of evidence, it doesn't mean they can do anything they want. And it's just simple as that. There is error after error after error in this trial. I'm a trial lawyer, not an appellate lawyer. But they're not... the game has to stop. You can't commit error after error because you think your case is overwhelming and you argue it there. But is any of that reversible error? It's reversible error because we don't believe... Because it's cumulative? Because it's cumulative. That was our first argument. And it's cumulative, and there has to be a line drawn. There just has to be a line drawn if you're an appellate lawyer. If people think they're going to lose, they do what they want because I'm going to lose. If people think they've got a good case, they do what they want. That's chaos in the courtroom. Thank you, counsel. It's chaos in the courtroom. Can we quote you on that? Good morning. Janet Mahoney on behalf of the people of the state of Illinois. To get things started, the jumping off point that counsel referred to as the mafia evidence, the admissibility of that evidence is not being challenged here today. It's the use of that evidence in closing argument. Therefore, the admissibility of that evidence, the use of it during the course of the trial, there is nothing wrong with it and it is not being reviewed here today. In terms of using it in closing argument, it was properly before the court, unchallenged, and the state's use of that was based on the record. There was evidence in the record that Florence was afraid due to what her father told her at the time of the shooting, don't say anything, let's get out of here. She thought the defendant was in the mafia and she didn't come forward because she was afraid the defendant was in the mafia and she was afraid she would get killed. That argument in closing argument was absolutely fine. In closing argument, there was a reference to an attorney. And as soon as the state mentioned the attorney, there was an objection. It was sustained. The jury was immediately instructed to not consider that, that that was improper. The state finished up their argument. The jury was again instructed that that was an improper comment, that they shouldn't consider it. And then before the jury started to deliberate, they were provided with instructions that told them that closing arguments are not evidence and any argument not based on the evidence should be disregarded. You think they listened to that? Of course they did. We have to presume that they did. Unless there is something else in the record that shows that they did not, you presume that they followed the instructions in the case. In terms of the comment about Willie, that was absolutely invited. During his closing argument, counsel argued, they assumed I was the killer. They had two descriptions I didn't fit. Nobody saw the murder. Nobody saw the defendant shoot him. The witnesses lied. They started this as a rumor and now suddenly there are current witnesses. The response to that was, well, somebody did come forward. That simply is not true, that they just picked you out of nowhere, that they focused on you even though they had a different description. That simply was not true, and the people were entitled to respond to that. In terms of error infecting this entire trial, it simply did not happen. This was a good trial. It was a long trial. There were excellent attorneys on both sides. As the judge repeatedly said, great attorneys for the defendant, great attorneys for the state. The judge had control of his courtroom. He sustained objections when he needed to. He provided instructions to the jury when he needed to. This is not a case of cumulative error. Also, if you look at defendant's brief, he only raises, other than the first issue which is cumulative error, we're talking about four issues here. That is not infecting the entire trial, keeping in mind that there was nothing wrong with the admissibility of the mafia evidence, and that issue is not pending before the court here today. Unless you have any questions. I have a curiosity. Those witnesses who testified that they worked for Bella Pizza eight, nine years after this incident, this crime, were they working for the defendant during those eight or nine years? Do you know? Is it reflected in the record? I'm not 100% certain that was brought out at the trial, though. The jury knew that they continued to work at that pizza place, and there was a suggestion that they were working for the defendant. I mean, they were afraid of this mafia person, allegedly, throughout their testimony. But did it come out in the record that he was still there and they were still working for him for eight or nine years? I believe there was indication in the record that he was still there. Say it again. I believe there's indication in the record that he was still there for some of that time. I understand he started another pizza place. And as to whether he was there on a daily basis or he was there for the entire eight, nine years, no. But he was there for some of the time. But that was a piece of evidence that was before the jury. The jury heard that, and they were able to assess that information. I do believe that immediately after the shooting, he was not there for a while. And he was not the only manager, or was he? Well, he was the owner. He was the owner. They had a couple of managers, two of whom were mentioned in this case,  They were the managers. And what is your position regarding the mentioning or the comments, the comment about his running to a lawyer or going to see a lawyer? That it was immediately objected to. The objection was sustained. It was sustained. Correct. And that coupled with the jury instruction was sufficient to cure an impossible error. Correct. Not only the jury instructions, but the two instructions to the jury at the time it happened. Immediately after it happened and when the state finished their argument. Yes. Your strongest case, is that sufficient to cure the possible prejudice to a jury? Well, just your regular black letter law, and then comparing it to the cases the defendant cites that says it can never be cured. In the cases the defendant cites that says it can never be cured, those were repeated gross improprieties. They were closely balanced cases. This is one incomplete comment, because it was cut off as soon as the word attorney came out. It was never repeated again. There were instructions to the jury repeatedly. So our strongest case is the fact that it is not automatically reversible just because you mention an attorney. And in this case, the court went above and beyond to make sure that any error here, any prejudice was taken care of through instructions. Unless there are any other questions, people request that you affirm his convictions and sentence. Thank you very much. Mr. Jensen, four minutes. Five minutes, I might need my chair. Your Honor, I don't have much to say. In response, I'd like to point out that the Willie that they're talking about, who they talked about in this case, who came forward and testified, that's how he characterized it in the closing argument. Willie was not a witness. What was done in this case is the prosecutor commented in the closing argument as to what Willie, he inferred Willie would say. And he used that word infer. And the inference is essentially that Willie implicated Cosmano, which he might have mentioned his name, but it wasn't enough to have arrested him in 1981. And I think it was inappropriate. With regard to the witnesses that worked there, that continued to work there, those were the Maldonados, Mr. Enrique Maldonado and I think Willie Maldonado. Neither one of them said that they were afraid of Cosmano. Neither one of them said that they had fear of any mafia relationships. Neither one of them said that at all. And these were two witnesses or two witnesses who had, I think, between them about 40 arrests apiece and several convictions. And that was the impeachment regarding those witnesses. I don't know if I've used my four minutes, but thank you very much. Thank you, Counsel. Thank you. This matter will be taken under advisement.